UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAMUEL PERRY,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES PARCEL SERVICE,<br>JOHN DOE 1-10, and ABC CORP. 1-10,<br><br>        Defendants. | Civil Action No. 21-11028 (JXN) (AME)<br><br>**OPINION** |

**NEALS**, District Judge:

This matter comes before the Court on Defendant United Parcel Service's ("Defendant" or "UPS") motion to dismiss Plaintiff Samuel Perry's ("Plaintiff") Second amended complaint (the "SAC") (ECF No. 28) filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 33). Plaintiff opposed (ECF No. 34), and UPS replied. (ECF No. 35). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1332 and 1391(b)(2), respectively. The Court has carefully considered the parties' submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, UPS's motion to dismiss (ECF No. 33) Plaintiff's SAC (ECF No. 28) is **GRANTED**.

**I.**    **BACKGROUND AND PROCEDURAL HISTORY**

On March 29, 2021, Plaintiff commenced this matter in the Superior Court of New Jersey. (UPS's Notice of Removal (ECF No. 1) (the "Notice of Removal") ¶ 1); (*see also* Ex. A to the Notice of Removal (ECF No. 3) (the "initial complaint")). Following receipt of the Summons and Complaint, UPS removed the case. (Notice of Removal ¶¶ 2, 4). On August 18, 2021, Plaintiff filed an Amended Complaint ("Am. Compl.) (ECF No. 13).

1

Plaintiff's amended complaint alleged the following causes of action under New Jersey's Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1, *et seq*: (i) discrimination (Count One); (ii) retaliation (Count Two); (iii) hostile work environment (Count Three); and (iv) punitive damages (Count Four). (*Id.*)

On September 15, 2021, UPS filed a motion to dismiss. On October 13, 2021, Plaintiff opposed. On November 8, 2021, UPS replied.

On March 5, 2024, the Court granted UPS's motion to dismiss Plaintiff's amended complaint. (ECF Nos. 22, 23). The Court dismissed Counts One through Three without prejudice and Count Four with prejudice. (*Id.*)

On April 13, 2024, Plaintiff filed a Second Amended Complaint.[1] ("SAC") (ECF No. 28). Plaintiff's SAC alleges the following causes of action under New Jersey's Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1, *et seq*: (i) discrimination (Count One); (ii) retaliation (Count Two); and (iii) hostile work environment (Count Three). (*Id.*)

On May 31, 2024, Defendant filed a motion to dismiss. ("Def.'s Mov. Br.") (ECF No. 33). Plaintiff opposed and cross moved for leave to amend. ("Pl.'s Opp. Br.") (ECF No. 34). Defendant replied. (ECF No. 35). This matter is ripe for consideration.

Plaintiff works for UPS as a truck driver. (SAC at 2 ¶¶ 1-2). During his tenure, he "suffered sustained and repeated harassment from supervisory personnel" by "create[ing] a hostile work environment for Plaintiff." (*Id.* ¶ 4). This was "often-times" in response to Plaintiff "filing [] grievances" that UPS "ignored and postponed" resolution to harm Plaintiff. (*Ibid.*).

From March 4, 2020, to March 31, 2021, Plaintiff filed thirteen grievances against UPS personnel for harassment, unpaid wages, bullying, bodily harm, disparate treatment,

---

[1] The following factual allegations are taken from the Amended Complaint that are accepted as true. *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010).

2

reassignments, and job duties. (*Id.* ¶¶ 5-19). These grievances all were delayed but resolved. On March 31, 2021, Plaintiff filed a single grievance that has not been resolved. (*Id.* ¶ 31).

## II.     **LEGAL STANDARD**

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief" and provide the defendant with "fair notice of what the claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotations and ellipses omitted). On a Rule 12(b)(6) motion, the "facts alleged must be taken as true" and dismissal is not appropriate where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). A complaint will survive a motion to dismiss if it provides a sufficient factual basis to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a complaint is sufficient, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must "assume the[] veracity" of well-pleaded factual allegations and ascertain whether they plausibly "give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citations omitted).

## III.     DISCUSSION[2]

### i.     Plaintiff Fails to Plead a NJLAD Discrimination Claim (Count One)

To state an NJLAD claim, Plaintiff must allege that he "(1) belongs to a protected class; (2) was performing a job at a level that met the employer's legitimate expectations; (3) suffered an adverse employment action; and (4) others not within the protected class did not suffer similar adverse employment actions." *Maclean v. Stuart Weitzman Shoes*, 863 F. Supp. 2d 387, 391 (D.N.J. 2012) (citation omitted).[3]

"A plaintiff may show circumstances giving rise to an inference of discrimination with any kind of relevant evidence, including comparator evidence, evidence of similar racial discrimination against other employees, or direct evidence of discrimination from statements or actions by [the plaintiff's] supervisors suggesting racial animus." *Phillips v. Starbucks Corp.*, 624 F. Supp. 3d 530, 540 (D.N.J. 2022) (citation omitted).

Plaintiff is African American and therefore, belongs to a protected class. Plaintiff also meets the second prong because he alleges that at an arbitration proceeding that occurred

---

[2] Defendant argues that all of Plaintiff's claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. As Defendant noted, the Court previously addressed the LMRA preemption issue. (ECF No. 22 at 4-8). To reiterate the Court's holding, "Plaintiff's allegations regarding seniority, job preference, transfer eligibility, and the timely resolution of grievances are preempted. *Plaintiff's allegations regarding freedom from harassment and a hostile work environment, and the assignment of vehicles are not preempted.*" (*Id.* at 4) (emphasis added). The Court notes that, "District courts 'have consistently determined that claims under the NJLAD are separate and independent from the terms of labor contracts.'" (*Id.* at 7 citing *Naples v. N.J. Sports & Exposition Auth.*, 102 F. Supp. 2d 550, 553 (D.N.J. 2000) (citations omitted); *Patterson v. Exxon Mobil Corp.*, 262 F. Supp. 2d 456, 465-66 (D.N.J. 2003) ("Plaintiff's LAD claim seeks the enforcement of state anti-discrimination law, which defines the right not to be discriminated against without reference to the terms of the parties' CBA.")).

[3] "Where there is no direct evidence of discrimination, race discrimination claims under both Title VII and NJLAD are analyzed under the now familiar *McDonnell Douglas* burden-shifting framework." *See Taylor v. Amcor Flexibles Inc.*, 669 F. Supp. 2d 501, 505 (D.N.J. 2009), *aff'd*, 507 F. App'x 231 (3d Cir. 2012) (citations and footnote omitted); *see also Iadimarco v. Runyon*, 190 F.3d 151, 164 (3d Cir.1999) (Courts employ the same Title VII evidentiary framework and standard of review when analyzing claims under the NJLAD); *Cortes v. Univ. of Med. & Dentistry of N.J.*, 391 F. Supp. 2d 298, 311 (D.N.J. 2005) (explaining "[t]he analysis which is applied in Title VII claims is equally applicable to actions brought under other civil rights statutes, and thus the Title VII analysis applies to claims brought under the NJLAD as well." (internal citation omitted); see also *Hargrave v. Cnty. of Atl.*, 262 F. Supp. 2d 393, 410 (D.N.J. 2003) ("As a general matter, the same basic principles apply when evaluating [a] [p]laintiff's claims under [Title VII and the NJLAD].").

4

subsequent to his initial termination in April 2022, the arbitrator found "[Plaintiff] is a long-term employee with a good disciplinary record, as well as a good record of safe driving. . . ." and that he "received a certificate of recognition from Defendant for seventeen (17) years of safe driving" in 2023. (SAC ¶¶ 23, 28).

Turning to the third element, an "adverse employment action," must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) (cleaned up). In other words, "[i]f an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action may be found." *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 153 (3d Cir. 1999). As to establishing an inference of discrimination, a plaintiff may use any relevant evidence, including "comparator evidence," evidence of similar racial discrimination occurring against other employees, or direct evidence of statements or actions suggesting racial animus. *See Phillips*, 624 F. Supp. 3d at 540. "Comparator evidence" is "evidence that defendant treated 'similarly situated' individuals not within plaintiff's protected class more favorably than it treated plaintiff." *Darby v. Temple Univ.*, 216 F. Supp. 3d 535, 542 (E.D. Pa. 2016) (citing *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2016)).

Here, Plaintiff was temporarily terminated twice, in April and October of 2022. (SAC ¶¶ 23-24). After Plaintiff's temporary termination in April, an arbitrator suspended him for five days. (SAC ¶ 23). Plaintiff was similarly suspended after his October termination and reinstatement. (SAC ¶ 24). "This district has found suspensions often constitute adverse employment actions in the discrimination context." *Foster v. Kennedy University Hospital, Inc.*, No. 20-4415, 2022 WL 2981156 at *5 (July 28, 2022). If these suspensions were without pay, Plaintiff's suspensions

constitute adverse employment actions.[4] *See Hargrave v. Cnty. of Atl.*, 262 F. Supp. 2d 393, 423 (D.N.J. 2003) (stating that "there can be little dispute that the five-day suspension Plaintiff received. . .constituted the type of tangible, 'adverse employment action' contemplated by Title VII and the NJLAD").[5] However, Plaintiff alleges that "[u]pon information or belief, Caucasian and/or non-African American similarly situated employees, have not been subject to similar scrutiny, have not been suspended for similar breaches of UPS's rules, and have not been terminated for those breaches." (SAC ¶ 25). Such an allegation alone is not sufficient to show Defendant discriminated against him based on race. *See Foy v. Wakefern Food Corp.*, No. 09-1683, 2010 WL 147925, at *4 (D.N.J. Jan. 7, 2010) ("A mere allegation that an adverse employment action was motivated by [a protected characteristic], without more, is exactly the type of broad conclusory allegation which the Supreme Court has found insufficient.").

While Plaintiff may perceive his termination as unfair or arbitrary, the Court cannot find based on the allegations in the Complaint that Plaintiff has sufficiently alleged that his two terminations from UPS, in which he was reinstated in both cases, resulted from racial discrimination. Indeed, Plaintiff elsewhere explicitly alleges UPS terminated him because of his non-compliance with UPS's "methods, procedures, policies, and instructions" and "for an infraction of Defendant's rules." (SAC ¶¶ 23-24). "Plaintiff fails to plausibly allege that the adverse employment action he suffered, *i.e.*, UPS's termination of his employment, was because

---

[4] Defendant cites *Hancock v. Borough of Oaklyn*, 347 N.J. Super. 350, 361 (App. Div. 2002) for the proposition that Plaintiff's suspensions cannot constitute adverse employment actions "where it resulted from substantiated disciplinary charges after hearing in front of a hearing officer." (Def.'s Rep. at 8). However, *Hancock* is distinguishable. In *Hancock*, the employees were never terminated and tried to argue the suspensions were retaliatory; however, here, Plaintiff was terminated and the case law regarding terminations in the NJLAD context is clear: suspension is an adverse employment action. *Hargrave*, 262 F. Supp. 2d at 423.
[5] Plaintiff's allegation of an overtime denial (SAC ¶ 6) does not constitute an adverse employment action. *Rivers v. Potter*, No. 05-4868, 2007 WL 4440880, at *7 (D.N.J. Dec. 18, 2007) (finding a single denial of overtime was not an adverse employment action).

6

of his race." *Worthy v. Unilever United States, Inc.*, No. 23-17570, 2024 WL 3326039 at *9 (D.N.J. July 8, 2024).

### ii.     Plaintiff Fails to Plead an NJLAD Retaliation Claim (Count Two)

The NJLAD prohibits an employer from taking any retaliatory action against an employee who engages in a protected activity. N.J. Stat. Ann. § 10:5-12(d). To state a *prima facie* case for retaliation under NJLAD, an employee must demonstrate: "(1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *See Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 286 (3d Cir. 2001); *see also Davis v. City of Newark*, 417 F. App'x 201, 202 (3d Cir. 2011).[6] "An NJLAD retaliation claim can only succeed where the plaintiff shows that he or she faced reprisal for opposing conduct that the NJLAD prohibits, including discrimination on the basis of race, color, religion, sex, or national origin." *Sharp v. Kean Univ.*, 153 F. Supp. 3d 669, 676 (D.N.J. 2015) (internal quotation marks omitted).

"To engage in protected activity, the employee must identify what illegal employment practice is being opposed, by either implicitly or explicitly alleging that a protected characteristic was the basis for the adverse employment action." *Phillip*, 624 F. Supp. 3d at 546-47 (citation omitted). "[N]ot every complaint. . .entitles its author to protection from retaliation under the NJLAD. . .Rather, only challenges to discrimination prohibited by the NJLAD–such as

---

[6] Some courts explicitly include a fourth element in analyzing whether a plaintiff has stated a claim for retaliation in violation of the NJLAD—i.e., that plaintiffs show they are in a protected class. *See, e.g., Berdzik v. Physicians Endoscopy, LLC*, No. 20-11656, 2021 WL 3260857, at *7 (D.N.J. July 30, 2021); *Muhammad v. Day & Zimmerman NPS*, No. 09-01670, 2011 WL 3036627, at *6 (D.N.J. Jul. 25, 2017); *Victor v. State*, 4 A.3d 126, 141 (N.J. 2010). Other courts do not explicitly include this fourth element in their analysis. *See, e.g., Abramson*, 260 F.3d at 286 (articulating three elements for a prima facie case of retaliation under Title VII and the NJLAD); *Woods-Pirozzi v. Nabisco Foods*, 675 A.2d 684, 695 (N.J. 1996) (same). Plaintiff satisfies this fourth element; as noted above, he is African American, and therefore, belongs to a protected class.

discrimination on the basis of race, age, or gender. . .constitute 'protected activity.'" *Ogunbayo v. Hertz Corp.*, 542 F. App'x 105, 107 (3d Cir. 2013). "'A general complaint of unfair treatment,' however, 'is insufficient to establish protected activity' under Title VII and the NJLAD." *Phillips*, 624 F. Supp. 3d at 547 (quoting *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)); *Ogunbayo*, 542 F. App'x at 107 ("general complaint of unfair treatment" not protected activity under the LAD); *see also Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701–02 (3d Cir. 1995); *Ucar v. Cinar Foods Inc.*, 2018 WL 10374646, at *2 (D.N.J. December 19, 2018) ("The NJLAD does not protect employees from 'retaliation' in some generalized sense; rather, it 'protects employees from retaliation for having opposed unlawful discrimination'") (quoting *LaPaz v. Barnabas Health Sys.*, 634 F. App'x 367, 370 (3d Cir. 2015)). "The 'complaint[] must be specific enough to notify management of the particular type of discrimination at issue in order to constitute protected activity.'" *Phillips*, 624 F. Supp. 3d at 547 (alteration in original) (quoting *Sanchez v. SunGard Availability Servs. LP*, 362 F. App'x 283, 288 (3d Cir. 2010)).

Viewing the facts in the light most favorable to Plaintiff, it is a close question whether he satisfies the first element; the SAC does allege retaliation for filing grievances (SAC ¶¶ 4, 11, 13, 17) and the instant lawsuit (SAC ¶¶ 21-26), which implicates Plaintiff's alleged differential treatment based on race (SAC ¶¶ 11-14; 25-26).

However, the second element—that Plaintiff afterward or contemporaneously suffered an adverse employment action because of the protected activity—is not satisfied. Temporal proximity between the protected activity and the adverse employment action can be circumstantial evidence of causation, as it is often "'sufficient to raise the inference that [the plaintiff's] protected activity was the likely reason for the adverse action.'" *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173,

177 (3d Cir.1997). A plaintiff may also establish causation, even where there is a lack of temporal proximity, with "circumstantial evidence of a 'pattern of antagonism' following the protected conduct," *Kachmar*, 109 F.3d at 177, or other evidence such as "inconsistent reasons for termination, evidence casting doubt on reasons proffered for termination, and a change in demeanor after a complaint of discrimination." *Watkins v. Nabisco Biscuit Co.*, 224 F.Supp.2d 852, 872 (D.N.J. 2002). When a causal connection relies on temporal proximity alone, courts generally require that the termination occur within a few days of the protected activity." *Incorvati v. Best Buy Co., Inc.*, No. 10–1939, 2010 WL 4807062, at *3 (D.N.J. Nov. 16, 2010) (citations omitted). Even where a plaintiff has some other suggestive facts, although "a few months" between an employee engaging in the protected activity and the employer's retaliatory acts has been deemed sufficient. Here, Plaintiff's first temporary termination occurred over one year after he filed his initial complaint, and his second temporary termination occurred nearly two years after his complaint was filed which exceeds the amount of time courts have found sufficient. *See, e.g.*, *Rogers v. Alternative Res. Corp.*, 440 F. Supp. 2d 366, 377 (D.N.J. 2006) ("gap of nearly ten months does not support an inference of causation."). Plaintiff has failed to allege a causal link.

### iii. Plaintiff Fails to Plead a NJLAD Hostile Work Environment (Count Three)

To state a hostile work environment claim, Plaintiff must allege "that the complained-of conduct (1) would not have occurred but for the employee's race; and the conduct was (2) severe or pervasive enough to make a (3) reasonable African American believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." *Nuness v. Simon and Schuster, Inc.*, 325 F. Supp. 3d 535, 545 (D.N.J. 2018) (cleaned up); *Abramson*, 260 F.3d at 277.

Here, UPS contends that Plaintiff alleges neither racial harassment nor severe or pervasive harassment. (Defs.' Mov. Br. at 15-19). Plaintiff contends "that [Plaintiff], who is [an] African American driver for UPS, was treated worse than all of the other drivers at UPS who worked under

9

Mrs. Benitez, none of whom, upon information and belief, were African American." (Pl.'s Opp. Br. at 37 (citing SAC ¶¶ 5, 11-14, and 18)).

Contrary to Defendant's contention otherwise, Plaintiff's SAC does allege harassment based on race. (Defs.' Mov. Br. at 15-16). Plaintiff alleges that he was told he could not smoke in any tractor he was assigned but observed other "Caucasian and/or non-African American drivers smoking in their tractors and "learned that Caucasian and/or non-African American drivers were not told they were prohibited from smoking" in their tractors. (SAC ¶¶ 11-12). Additionally, Plaintiff pleads that he was assigned a different tractor each day after the start of the COVID-19 pandemic, while other non-African American drivers were allowed to use the same tractor every day. (SAC ¶¶ 13-14). These allegations support a plausible inference that but for his race his employer would not have engaged in the alleged harassing conduct. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016).

While Plaintiff has sufficiently plead facts to satisfy the first element, the incidents of discrimination alleged by Plaintiff are not sufficient to sustain his hostile work environment claim. Under the test for evaluating a hostile work environment claim, "the second, third, and fourth prongs, while separable to some extent, are interdependent." *Ryan v. Twp. of Mount Olive*, 2010 WL 3933201, at *5 (N.J. Super. Ct. App. Div. Sept. 24, 2010) (*citing Lehmann v. Toys 'R' Us, Inc.*, 626 A.2d 445, 453 (N.J. 1993)). "One cannot inquire whether the alleged conduct was 'severe or pervasive' without knowing how severe or pervasive it must be." *Lehmann*, 626 A.2d at 453. "The answer to that question lies in the other prongs: the conduct must be severe or pervasive enough to make a reasonable [African American] believe that the conditions of employment are altered and his working environment is hostile." *Id.* at 453-54.

To determine whether the conduct at issue is "severe or pervasive," the Court must consider "'the totality of the relevant circumstances,' including: '(1) the frequency of all the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance.'" *Church v. Sears Holding Corp.*, 605 F. App'x 119, 125 (3d Cir. 2015) (quoting *Godrey v. Princeton Theological Seminary*, 952 A.2d 1034, 1045 (N.J. 2008)). The "*sine qua non* of a hostile work environment claim is a workplace. . .permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 240 (D.N.J. 2015) (internal quotation marks omitted).

Here, Plaintiff asserts that the allegations in the SAC establish severe or pervasive discrimination and points the Court to two exhibits attached to his opposition in support. (Pl.'s Opp. Br. at 38). The two exhibits are: (1) a warning letter rebuttal form explaining why he left the keys to his tractor in the vehicle; and (2) numerous grievance reports filed by Plaintiff. (ECF Nos. 34-5, 34-6).

A "district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings" unless they are "integral to or explicitly relied upon in the complaint. . . ." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022). Here, both exhibits, particularly the grievances, are continually referenced, integral to, and relied upon in the SAC. Thus, the Court may consider the documents.

However, after analyzing the SAC, coupled with Plaintiff's exhibits, the allegations, viewed in their totality, do not sufficiently show severe or pervasive conduct to establish a hostile work environment claim.[7] *Nitkin v. Main Line Health*, 67 F. 4th 565, 570 (3d Cir. 2023) (To satisfy this standard "conduct must be extreme") (internal citation omitted); *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 168 (3d Cir. 2013) ("To determine whether an environment is hostile, a court must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.") (internal quotation marks omitted); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (For discrimination to constitute severe or pervasive behavior, it must "alter the conditions of [the victim's] employment and create an abusive working environment.") (internal quotation marks omitted); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not" satisfy this element).

Plaintiff's allegations of being assigned "old tractors," being "angrily and loudly" told to take whatever tractor was assigned to him in the presence of other employees, being told he could not smoke in the tractor, being assigned a different tractor each day during the COVID-19 pandemic, not being given adequate cleaning supplies during the pandemic, receiving a written warning for locking the tractor keys in the vehicle, and statements from his supervisor that she "fel[t] threatened by him" and "not safe serving him" (SAC ¶¶ 5-19) are more analogous to cases where the court has not found severe or pervasive discrimination. *See Peace-Wickham v. Walls*, 409 F. App'x 512, 520 (3d Cir. 2010) (reassignment, delay in resolution of complaints, ignoring

---

[7] The Third Circuit has clarified that the proper standard is "severe *or* pervasive." *Castleberry v. STI Group*, 863 F.3d 259, 264 (3d Cir. 2017) (noting that precedent was inconsistent as to the proper standard for a hostile work environment claim) (emphasis in the original).

complaints, refusal to allow breaks not severe or pervasive); *Buffa v. New Jersey State Dep't of Judiciary*, 56 F. App'x 571, 576 (3d Cir. 2003) (no harassment where employer targeted plaintiff for reprimand, repeatedly questioned plaintiff's need for time off due to disability, subjected her to "hostile" disciplinary proceedings for perceived unexcused absences); *Hanani v. State of New Jersey Dep't of Env't Prot.*, 205 F. App'x 71, 79 (3d Cir. 2006) (no harassment based on increased workload, conflicting edits to work, arguing with supervisor, alleged reduction in performance review).

### iv. Amendment Would Be Futile

Plaintiff requests leave to amend (ECF No. 34), which Defendant, opposes as futile. (Def.'s Rep. Br. at 13-16). Under Federal Rule of Civil Procedure 15(a), "the court should freely give leave [to amend] when justice so requires." But a District Court has discretion to dismiss a complaint with prejudice when there are "repeated failures to cure the deficiency by amendments previously allowed. . ." *USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3d Cir. 2004) (cleaned up).

Here, the Court previously permitted Plaintiff to amend once before, to cure his NJLAD deficiencies. (ECF No. 23). As demonstrated above, Plaintiff's SAC fails to do so. Plaintiff's proposed Third Amended Complaint alleges a new statutory wage claim pursuant to N.J.S. § 34:11-4.10(c) for failure to pay all wages, which exceeds the scope of the Court's leave to amend. (ECF No. 23). Additionally, Plaintiff's wage claim would be preempted. *See Johnson v. Langer Transport Corp.*, No. 15-1256, 2015 WL 2254671 at *5 (D.N.J. May 13, 2015) ("Plaintiff's claims for unpaid wages under the NJWHL are preempted under the LMRA because such claims, at their core, require an analysis and interpretation of the CBA and, therefore, are preempted by the CBA"). Moreover, the proposed TAC does not cure the deficiencies identified above. As such, amendment would be futile.

## IV.     CONCLUSION

For the reasons set forth above, UPS's motion to dismiss (ECF No. 33) is **GRANTED** and Plaintiff's Second Amended Complaint is **DISMISSED with prejudice.** An appropriate Order accompanies this Opinion.

**DATED:** December 9, 2024

_____
JULIEN XAVIER NEALS
United States District Judge

14